COMMONWEALTH of Pennsylvania,
Appellee

v.

Paul A. SEGIDA, Appellant.

Superior Court of Pennsylvania.

Submitted June 26, 2006.

Filed Oct. 24, 2006.

Reargument Denied Jan. 4, 2007.

Louis W. Emmi, Pittsburgh, for appellant.

Michael W. Streily, Deputy Dist. Atty., James R. Gilmore, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

BEFORE: TODD, BENDER and GANTMAN, JJ.

OPINION BY BENDER, J.:

¶ 1 This is an appeal from a judgment of sentence imposed upon Appellant after he was convicted in a bench trial of two counts of Driving Under the Influence (DUI), and one count of careless driving. Appellant sets forth four issues in his statement of questions involved:

Did the Commonwealth fail to submit sufficient evidence to satisfy its burden of proof that Appellant violated 75 Pa. C.S.A. § 3802(a)(1) or (c), in that it failed to produce any evidence as to the time of Appellant's drinking, the time of Appellant's driving, or the time of the accident?

Is 75 Pa.C.S.A. § 3802(c) unconstitutional in that it is void for vagueness, in failing to apprise a reasonable driver as to what conduct is criminal, since it requires a driver to theorize what his or her BAC might be two hours into the future?

Is 75 Pa.C.S.A. § 3802(c) overly and unconstitutionally broad in that it criminalizes not only criminal behavior of driving in an impaired state followed by a BAC test showing a level above .16, but also criminalizes driving in an unimpaired state followed by a BAC test showing a level above .16?

Does 75 Pa.C.S.A. § 3802(c) violate Appellant's due process rights by establishing an irrebuttable mandatory presumption that a BAC of .16, within two hours of driving, proves that the motorist was previously driving in an impaired state?

Appellant's Brief, at 8.

¶ 2 After careful consideration, we reverse Appellant's judgment of sentence for DUI.

¶ 3 On September 19, 2004, at approximately 12:20 a.m., West Mifflin Police Officer Patrick Hillyard received a dispatch to investigate a one-vehicle accident on Bettis Road, West Mifflin, Allegheny County, Pennsylvania. Upon arriving at the scene, Officer Hillyard observed a vehicle "almost over the hillside" at the top of the hill on Bettis Road. N.T. Trial, 10/20/05, at 7. According to Officer Hillyard, the vehicle had rotated 180 degrees and come to rest "into some brush." *Id.* Standing outside the vehicle were two men. Officer Hillyard approached the two men and began questioning them as to what had happened. The two men were subsequently identified as Appellant and his brother, Thomas. While questioning Appellant, Officer Hillyard detected a strong odor of alcohol. Appellant indicated to Officer Hillyard that he had been driving the vehicle westbound on Bettis Road when he lost control of the vehicle while arguing with his brother. *Id.* at 9. Upon being asked, Appellant admitted that he had been drinking alcohol that night. Appellant indicated that he and his brother had been at a local club drinking and that he was driving his brother home. *Id.* at 10–11.

¶ 4 Appellant was then asked to perform one or more field sobriety tests and complied with this request. In the estimation of Officer Hillyard, Appellant did not satisfactorily perform the field tests and Appellant was placed under arrest and taken to McKeesport Hospital where he was read his chemical test warnings. Appellant signed the DL–26 form and submitted to a drawing of a blood sample. The blood sample was later transported to the County Crime Lab for testing with that testing revealing a BAC of .326.

¶ 5 Appellant was subsequently charged with two counts of DUI, 75 Pa.C.S. § 3802(a)(1) and 75 Pa.C.S. § 3802(c), and one count of careless driving, 75 Pa.C.S. § 3714. Appellant proceeded to a bench trial on October 20, 2005. At that trial, the Commonwealth presented a single witness, the arresting officer, Officer Hill-

yard. At the conclusion of the trial, Appellant was convicted of all charges. Appellant was subsequently sentenced on December 14, 2005. The present, timely appeal followed.

¶ 6 Before addressing Appellant's challenges to his judgment of sentence, we must determine which, if any, of Appellant's questions presented have been properly preserved for appellate review. More specifically, we must determine if each of the four issues set forth in Appellant's Statement of Questions Involved was properly set forth in the Pa.R.A.P.1925(b) Statement of Matters Complained of on Appeal. Appellant's Statement of Matters Complained of on Appeal reads, in material part:

On October 20, 2005, a non-jury trial was held before the Honorable Cheryl Lynn Allen for the charges of DUI and violations of Sections 75 Pa.C.S.A. § 3802(c) and 75 Pa.C.S.A. 3803(b)(4), along with the summary offense of Careless Driving.

It was alleged that on or about September 19, 2004, the Defendant operated his vehicle while under the influence of alcohol in violation of the above subsections, wherein a one car accident took place and the police were subsequently summoned.

The Defendant, on the day in question, was placed under arrest and a blood test was taken.

During the course of the trial, various testimony was elicited from the police office, [sic] which demonstrated that he was unable to establish a time frame for the accident, thereby not being able to establish that the Defendant was operating his motor vehicle within two (2) hours of the time the blood test was taken. In addition, no expert testimony was offered by the Commonwealth to even establish a time frame for the De-

fendant's alcohol level to be at the tested weight. In addition, Sections 3802(c) and 3803(b)(4) were deemed unconstitutional by a Court of equal jurisdiction within the Commonwealth of Pennsylvania, more specifically Allegheny County. Though it is true that this matter is up on appeal, it will be argued that more weight should have been given to this argument. It will be argued that the Sections, as described, more specifically, 3801(c) and 3803(b)(4) are unconstitutional and, therefore, the trial court should have dismissed those charges in and of themselves. In addition, it will be argued that the sufficiency of evidence to find the Defendant guilty under 3802(a)(1), 3802(c), or 3803(b)(4) was insufficient for the reasons previously stated.

Statement of Matters Complained of on Appeal, at 1–2.

¶ 7 A review of the statement of questions involved, as set forth on page 8 of Appellant's brief and quoted above, reveals that Appellant raises a challenge to the sufficiency of the evidence and three specific constitutional challenges. The sufficiency of the evidence claims are grounded upon the fact that the Commonwealth failed to establish a time frame of Appellant's driving and did not establish that Appellant was driving in a reasonably proximate time to when he was interviewed by Officer Hillyard and put through field sobriety tests. Appellant further pins his sufficiency challenge upon the Commonwealth's failure to establish when his blood was drawn. A review of Appellant's Rule 1925 statement reveals that this issue was sufficiently set forth in that statement. As such, we find that issue properly before us. On the other hand, we cannot reach the same conclusion with respect to Appellant's three constitutional challenges.

■ ¶ 8 Appellant's statement of questions involved sets forth constitutional challenges of vagueness, overbreadth and a violation of due process grounded upon the creation of an irrebuttable presumption. A review of Appellant's Rule 1925 statement reveals that while Appellant indicated an intention to challenge the constitutionality of the statute, he does not set forth any specific basis for the challenge nor does he set forth what provisions of the constitution the statute offends. Indeed, the terms vagueness, overbreadth or irrebuttable presumption do not appear in that statement at all. Issues raised on appeal will be found waived where they were not set forth in the Rule 1925 statement or where a Rule 1925 statement is drafted in such a vague manner that the issue set forth in the appellate brief is not reasonably discernable from that statement. *Commonwealth v. Reeves*, 2006 PA Super 196, 907 A.2d 1 (Pa.Super.2006). Given the broad wording of Appellant's 1925 statement, we conclude that none of Appellant's constitutional challenges has been preserved for appellate review.[1] We now address Appellant's challenge to the sufficiency of the evidence.

■ ¶ 9 In Appellant's first issue, Appellant asserts that the evidence was insufficient to sustain the convictions for both 75 Pa.C.S. § 3802(a)(1) and 75 Pa.C.S. § 3802(c) as the Commonwealth failed to produce any evidence as to the time of Appellant's drinking, Appellant's driving and the time of Appellant's vehicle accident. We agree.

¶ 10 Our standard of review as to a challenge to the sufficiency of the evidence was set forth succinctly in *Commonwealth v. Griscavage*, 512 Pa. 540, 543, 517 A.2d 1256, 1257 (1986):

[W]hether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt.... The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence ... Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered ... Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence.

¶ 11 The driving under the influence statute reads, in relevant part:

§ 3802. **Driving under influence of alcohol or controlled substance**

(a) **General impairment.—**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

(2) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individu-

---

1. Our conclusion that Appellant's constitutional challenges have been waived is likely moot in any event. Given the Commonwealth's concession that there was a fatal defect in the case for violation of § 3802(c), Appellant's judgment of sentence now rests upon the validity of his conviction for violating § 3802(a)(1). As all of Appellant's constitutional challenges are directed at § 3802(c), Appellant's filing of a boilerplate Rule 1925 statement has no bearing on the disposition of this case.

al's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

(b) **High rate of alcohol.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

(c) **Highest rate of alcohol.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802.

¶ 12 Appellant builds his challenge largely upon the premise that the Commonwealth failed to establish the time he last drove the vehicle in question, *i.e.*, the time when the accident occurred. Appellant further argues that the Commonwealth provided no evidence from which the possibility that alcohol was consumed after Appellant last drove could be refuted.

¶ 13 Turning first to the conviction under 75 Pa.C.S. § 3802(c), we note that the Commonwealth has conceded in its brief to this Court that a fatal defect of proof has occurred, but the Commonwealth concedes a different defect of proof than the one Appellant relies upon: namely, the Commonwealth concedes that it failed to establish the time in which Appellant's blood was drawn at the hospital.[2] Notably, by its wording, 75 Pa.C.S. § 3802(c) specifically criminalizes driving after consuming a sufficient amount of alcohol such that the alcohol concentration in the individual's blood is .16% or higher within two hours after the individual has driven. Thus, in effect, the registering of a BAC of .16% or higher within two hours of driving is an element of the offense of DUI under 75 Pa.C.S. § 3802(c). As such, the failure to indicate the time in which the blood was drawn is indeed a significant shortfall in proof, if not truly a fatal defect. While it may not be absolutely essential to draw blood within two hours from the time Appellant last drove to satisfy the elements of 75 Pa.C.S. § 3802(a)(2), (b) or (c), the Commonwealth would certainly be obligated, as a prerequisite to conviction, to establish that Appellant had a BAC of .16% or higher within two hours of driving. While the Commonwealth could conceivably prove its case even if the blood were drawn more than two hours after Appellant had last driven, it may very well be necessary to offer expert testimony "relating back" Appellant's BAC within the two-hour window. In the present case, we have no indication whatsoever of when Appellant's blood was drawn and no expert testimony establishing Appellant's likely BAC at various points in the evening. As such, we agree with the Commonwealth that Appellant's conviction for 75 Pa.C.S. § 3802(c) must be reversed as unsupported by the evidence.

¶ 14 While the Commonwealth's concession is tied to its failure to establish the time the blood was drawn, this is but one part of the equation. In order to satisfy the elements of 75 Pa.C.S. § 3802(c), it

---

**2.** We take this opportunity to state our appreciation for the candor shown by the Commonwealth through the District Attorney's Office of Allegheny County.

would be essential to establish, within some degree of reasonable certainty, the time Appellant last drove, as well as when the blood or breath sample was taken. Only then can it be determined whether Appellant's BAC exceeded the threshold limit in question within the statutory two-hour window. In this regard, Appellant conducts a critical review of the trial transcript and correctly notes:

The state offered absolutely no evidence as to when Appellant drank alcohol, including whether he drank *after* the accident in question. Additionally, the Commonwealth presented no evidence from which it could be inferred what time the accident occurred. There were no witnesses to the accident or to the manner in which the car was operated. Rather, here, the state offered only (a) the time the officer received the call from dispatch about the accident and (b) the time that the officer arrived on the scene. It did not indicate when dispatch received the call about the accident, the name of the person who called dispatch, whether the person who called dispatch actually saw the accident or only came upon it some time later, or what time the caller first saw the accident. The officer testified that he did not know, when he arrived at the scene, how long Appellant's car had actually been located at the scene of the accident. And he acknowledged that he never asked Appellant if he had been at the scene the entire time since the accident occurred.

The state offered no evidence as to how often the road on which the accident occurred was patrolled or even driven on by others. The state offered no evidence of physical evidence at the scene of the accident which would help determine the timing of the incident. The state did not indicate whether any alcoholic beverage containers were found at the scene of the accident, which

could suggest Appellant's imbibing *after* the accident. The state did not show what, if any, commercial establishments were around the scene of the accident, again, possibly being a place where Appellant could have ingested alcohol after the accident. In other words, the state wholly failed to present direct or circumstantial evidence as to when Appellant last drank alcohol on September 19, 2004, when Appellant was driving, and when Appellant was involved in the accident.

Appellant's Brief, at 15–16.

¶ 15 Appellant raises salient points as to the lack of proof as to when Appellant last drove and his capacity at the time he was driving. This is critical as it was necessary, in order to convict under § 3802(c), for the Commonwealth to prove that Appellant's BAC was .16% or greater sometime within two hours of driving. As indicated above, this requires establishing, with reasonable certainty, both the time Appellant last drove and when the blood was drawn or breath sample was taken. However, the Commonwealth's failure to offer evidence from which it can be determined when Appellant last drove is not limited in relevance to the attempt to convict under § 3802(c). This evidence is also quite relevant to determine Appellant's capacity for safe driving when he actually drove the vehicle.

¶ 16 The capacity issue comes into play with respect to the Commonwealth's efforts to convict under § 3802(a)(1), general impairment. With respect to proving that Appellant violated § 3802(a)(1), since Appellant was not stopped while driving it was necessary to establish Appellant's incapacity to drive safely by extrapolation or relation back. Of course, technically speaking, all DUI cases involve some degree of extrapolation or relation back as

the Commonwealth never truly provides evidence of an individual's incapacity at the moment they were driving, but rather, the Commonwealth necessarily provides evidence of an individual's capacity some time after the vehicle was last driven. When a police officer conducts a stop of a vehicle and then in due course observes indicia of intoxication which leads to field sobriety tests and then a timely BAC test, our law allows the factfinder to conclude that Appellant's state of intoxication after being stopped is indicative of his state while driving. This is so because we recognize that although the state of intoxication is not static, neither is it so dynamic as to change substantially in a short period of time, nor does the state of intoxication fluctuate wildly and unpredictably so as to render a reading one moment irrelevant to the state moments later.[3]

¶ 17 Here, the Commonwealth provided evidence from which it could be safely determined that Appellant was incapable of safe driving. Evidence such as a strong odor of alcohol, slurred speech, bloodshot eyes, a staggering gait, fumbling with a driver's license or registration card and the inability to satisfactorily perform field sobriety tests are all indicia of intoxication to a degree that rendered the individual in question incapable of safely operating a motor vehicle commonly seen in DUI prosecutions. In Appellant's case, the testimony established that Appellant had a strong odor of alcohol and failed some field sobriety tests. Thus, a factfinder could reasonably conclude that, **at that point in time,** Appellant was incapable of safely operating a motor vehicle.

¶ 18 In support of its position, and perhaps in response to Appellant's argument that the Commonwealth failed to establish the time of the accident, the Commonwealth contends that there was evidence from which it could be inferred that Officer Hillyard arrived on the scene shortly after the accident occurred. Upon our review of the record, we must conclude that the premise that Officer Hillyard arrived on the scene shortly after the accident occurred results not from logical inference drawn from proven facts, but instead from bare presumption.

¶ 19 As Appellant's critique quoted above points out, there was very little evidence adduced from which one could infer that Officer Hillyard arrived on the scene shortly after the accident occurred. Indeed, the Commonwealth's argument in this regard is tied to testimony that Officer Hillyard responded promptly to the dispatch and that dispatches commonly went out immediately after receiving a call, and a single comment of Officer Hillyard in response to being challenged on cross-examination that he did not know how long the vehicle had been at the scene. We address both of these items of evidence *seriatim.*

¶ 20 While it may be true that Officer Hillyard responded promptly to the dispatch, there was no testimony regarding when the accident occurred. The Commonwealth did not provide the testimony of the person who called the accident in to the police so that it could be determined whether that person actually witnessed the accident or perhaps questioned Appellant

---

3. An expert's description of the nature of alcohol absorption/dissipation was related in *Commonwealth v. Modaffare*, 529 Pa. 101, 105, 601 A.2d 1233, 1235 (Pa.1992), as follows:

a person's blood alcohol level fluctuates with the passage of time, such that the level gradually rises after drinks have been consumed until a peak is reached roughly one hour after drinking has ceased, and that, thereafter, the level declines....[A]lcohol has no effect until it is absorbed into the bloodstream, which normally takes thirty to ninety minutes.

as to when the accident occurred. Nor did the Commonwealth provide testimony of any other eye witnesses to the accident. Moreover, Officer Hillyard did not provide testimony from which recency would be implied, such as the fact that the engine was still warm or, for example, that a damaged radiator was still steaming. Evidence such as this would have allowed the inference that the accident had occurred very recently and allow the factfinder to conclude that Appellant's intoxication at that time, proven by Officer Hillyard's observations and failing field sobriety tests, was indicative of his state of intoxication at the time he was driving. Lastly, the Commonwealth did not even establish a time window by introducing evidence that at some point in time the accident scene was clear and Appellant's vehicle was absent. This testimony could have been provided by any witness, including a police officer, who had passed through the eventual accident scene prior to 12:20 a.m. on the morning in question. None was presented.

¶ 21 The only other "evidence" upon which the Commonwealth relies in building an inference that Officer Hillyard arrived on the scene shortly after the accident occurred is one sentence of Officer Hillyard's testimony offered on cross-examination and an inference they argue the statement supports. When challenged on cross-examination that he did not know whether the vehicle had been there three hours, two hours or ten minutes, Officer Hillyard responded "that would be doubtful due to traffic on the road." N.T. Trial, at 19. While the Commonwealth seemingly argues that this statement allows an inference that had the accident occurred at other than a reasonably proximate time traffic congestion would have ensued, it is notable that Officer Hillyard provided no actual testimony about traffic conditions at the time he arrived on the scene, nor any testimony regarding how busy the road commonly was or whether the position of the vehicle impeded the flow of traffic on the roadway. Officer Hillyard merely stated that "it was doubtful due to traffic on the road," leaving us to infer from this statement that something about the positioning of the vehicle and the volume of traffic would have created a major backup in traffic had the accident occurred several hours previously. Unfortunately, the Commonwealth's "inference" seems undermined by the earlier testimony of Officer Hillyard that the vehicle was found "over the hillside" and "into some brush." *Id.* at 7. This testimony seemingly suggests that the vehicle was off the road, which may or may not be true. However, nothing in this testimony allows the inference that the vehicle was impeding traffic in any way, let alone the further leap of logic that the accident must have occurred very recently.

¶ 22 When the testimony is read and the Commonwealth's argument is digested, it becomes clear that the Commonwealth does not rely upon reasonable implication to prove that the accident was temporally proximate to Officer Hillyard's arrival but, rather, upon extrapolation from a bare presumption that the accident had just recently occurred. That is, Officer Hillyard takes for granted that the accident had just recently occurred and the trial court followed suit. Of course, proof through logical inference is allowable. However, proof by assumption renders a verdict based upon speculation, and a verdict that rests upon speculation is an infirm verdict. *Commonwealth v. Lenhart*, 520 Pa. 189, 553 A.2d 909 (1989).

¶ 23 Although the Commonwealth's failure to fix the time of Appellant's accident, with any degree of certainty, is a major pitfall in its case, it is but one difficulty with proof in the current case. Tied somewhat to the failure to establish

when the accident occurred, the Commonwealth similarly fails to preclude the possibility that Appellant ingested alcohol **after** the accident occurred. Officer Hillyard did not testify as to whether there were signs of imbibing alcohol in the car or nearby, or whether there were drinking establishments nearby which would have provided Appellant an opportunity to drink after he stopped driving. This fact provides greater uncertainty to the premise that Appellant's incapacity during the encounter with Officer Hillyard was representative of his incapacity when he was driving, thereby further undermining the Commonwealth's case.

¶ 24 The case of *Commonwealth v. Kelley*, 438 Pa.Super. 289, 652 A.2d 378 (1994), provides an instructive case comparison to the present case. The facts of *Kelley*, as set forth in our Opinion, establish that:

> On October 23, 1992, at approximately 1:30 a.m., Sylvia Panzone, an emergency medical technician, was driving on Tippecanoe Road when she came across a one-vehicle accident. A car had landed in an embankment on the side of the road; its headlights were on. Panzone called the fire department and returned to the scene. She observed Kelley in the front seat of the vehicle slumped over the steering wheel. The passenger door was locked, and the driver's door was against the embankment.
>
> An ambulance arrived and Dan Hall, one of the ambulance personnel, punched out the passenger window. After the door was opened, both Panzone and Hall smelled a strong odor of alcohol. Panzone stated that, as she got closer to Kelley's face, the alcohol odor was overwhelming. Hall also smelled a strong odor of alcohol on Kelley when the two were in the ambulance together.

Trooper David G. Fordyce arrived at the scene at approximately 2:15 a.m. He described Tippecanoe Road as a two lane, hilly, winding, country road with a 55 mile per hour speed limit. He stated that at the location of the accident, the westbound lane curves to the right, and that if one failed to negotiate that curve, his or her vehicle would hit the embankment. Trooper Fordyce noticed a strong odor of alcohol in Kelley's vehicle and found a beer bottle on the floor in front of the passenger seat. Trooper Fordyce arrived at Brownsville Hospital just before 3:00 a.m., at which time he spoke with Kelley. While questioning Kelley, Trooper Fordyce smelled a strong odor of alcohol, observed bloodshot eyes, and noted that Kelley had slurred and incoherent speech. Kelley admitted to Trooper Fordyce that he was driving the vehicle and that he was involved in an accident. At approximately 3:10 a.m., blood was drawn from Kelley for a blood alcohol test, the results of which revealed a .18% blood alcohol content (BAC). Trooper Fordyce testified that, based on his eight and one-half years of experience with DUI cases, Kelley was under the influence of alcohol to a degree which rendered him incapable of safe driving.

*Id.* at 379.

¶ 25 After Kelley was convicted he appealed to this Court and, *inter alia*, challenged the sufficiency of the evidence to support a conviction under 75 Pa.C.S. § 3731(a)(1). On the above facts, we concluded that the evidence was insufficient to sustain a conviction for § 3731(a)(1).[4] We reasoned:

> Thus, while it is true that an arresting officer need not actually see a defen-

---

**4.** 75 Pa.C.S. § 3731(a)(1) is the predecessor to 75 Pa.C.S. § 3802(a)(1), and was not changed in any material fashion when the new DUI law was enacted.

dant operate a motor vehicle to make a determination of intoxication, in this case, such an observation is considerably weakened by the time frame involved. Here, rescue workers smelled alcohol near Kelley when they came upon the accident scene. No one observed the manner in which Kelley was driving before the accident. Trooper Fordyce, who arrived at the accident scene at 2:15 a.m., was not able to determine the time of the accident. He admitted that it could have taken place at midnight or some other hour. It was not until approximately 3:00 a.m. that Trooper arrived at the hospital. There, he observed Kelley on a table in the emergency room, smelled an odor of alcohol, observed bloodshot eyes, and opined that Kelley had trouble speaking.

. . .

The Commonwealth has proved only that Kelley had an odor of alcohol about him and that his BAC was .18% at least one hour and forty minutes after the accident. There is nothing in the record to indicate how long Kelley had been unconscious in his automobile. Arguably, judging from the time Kelley estimated leaving his brother's home, the accident could have occurred as early as 11:00 p.m. The facts proven do not lead inescapably to the inference that Kelley was intoxicated to a degree which rendered him incapable of safe driving at the time he was operating his vehicle. The Commonwealth did not prove when the accident occurred. This is the only point at which Kelley's impairment is relevant and, since the Commonwealth did not establish even an approximate time for the accident, it was impossible to conclude beyond a reasonable doubt that Kelley violated section 3731(a)(1) at the critical time period. There are simply too many variables and not enough

corroborating facts in the evidence to support the verdict.

*Kelley,* 652 A.2d at 382–383.

¶ 26 In the present case, there are even more variables than were presented in *Kelley.* Here, we have no admissions as to what time Appellant left the last (or only) drinking establishment visited and no other evidence establishing that fact. There is also no circumstance negating the possibility of post-accident alcohol consumption. As such, Kelley provides ample support for our decision in the present case.

¶ 27 A review of the evidence reveals that the Commonwealth simply failed to set forth a sufficient time frame as to Appellant's driving to allow Officer Hillyard's observations to provide a basis for establishing Appellant's level of intoxication and, more importantly, his incapacity for driving safely, at the time he last drove. As such, the evidence must be deemed insufficient to support the conviction for DUI and Appellant's conviction and ensuing judgment of sentence must be reversed.

¶ 28 Judgment of sentence for DUI reversed, judgment of sentence for careless driving affirmed. Jurisdiction relinquished.

¶ 29 Judge TODD concurs in the result.