J-S07010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TED EUGENE DYE, JR., | |
| Appellant | No. 1008 MDA 2014 |

Appeal from the Judgment of Sentence Entered May 21, 2014
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0000799-2012

BEFORE:  BENDER, P.J.E., OLSON, J., and OTT, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED FEBRUARY 20, 2015**

Appellant, Ted Eugene Dye, Jr., appeals from the judgment of sentence of six months' Intermediate Punishment following his conviction for two counts of driving under the influence of alcohol (DUI) and related summary offenses.  Appellant challenges the suppression court's denial of his motion to suppress.  He also asserts a sufficiency of the evidence claim premised upon the Commonwealth's failure to draw his blood (for purposes of determining blood-alcohol content (BAC)) within the prescribed two-hour window set forth in the DUI statute.  After careful review, we affirm.

Appellant was charged DUI-general impairment, 75 Pa.C.S. § 3802(a)(1), and DUI-high rate of alcohol, 75 Pa.C.S. § 3802(b), as well as summary violations of 75 Pa.C.S. § 3309 (driving on roadways laned for traffic) and 75 Pa.C.S. § 3714 (careless driving), following a single-vehicle

crash that occurred on January 14, 2012. Appellant filed a suppression motion on October 26, 2012. A suppression hearing was held before the Honorable Marc F. Lovecchio on March 28, 2013. Subsequently, by opinion and order dated May 7, 2013, Judge Lovecchio denied Appellant's suppression motion. Suppression Court Opinion, 5/7/13, at 9. Appellant proceeded to a non-jury trial on January 23, 2014, before the Honorable Richard A. Gray. At the conclusion of his one-day trial, Appellant was convicted of all of the charged offenses. Appellant was then sentenced on May 21, 2014. The sentence imposed consisted of two days' incarceration, a concurrent term of six months' intermediate punishment, 75 hours of community service, the completion of the Alcohol Highway Safety School program, as well as mandatory fines and court costs. Appellant filed a timely notice of appeal, and complied in a timely fashion when the trial court ordered him to file a Pa.R.A.P. 1925(b) statement. The trial court issued its Pa.R.A.P. 1925(a) opinion on September 3, 2014.

Appellant now presents the following issues for our review:

  I.   Whether the [suppression] [c]ourt erred by failing to
       suppress all evidence, test results[,] and statements as (a)
       the Officer had no reasonable suspicion to believe
       [Appellant] violated the vehicle code; (b) the Officer had
       no probable cause to believe criminal activity had
       occurred; and (c) no probable cause existed to request
       Appellant to submit to chemical testing in violation of
       Article I[,] Section 8 of the Pennsylvania Constitution and
       the Fourth Amendment to the United States
       Constitution[?]

  II.  Whether [t]he Commonwealth established beyond a
       reasonable doubt that Appellant violated 75 Pa.C.S.A. §

- 2 -

3802(b), driving after imbibing, high rate[,] in that the Commonwealth did not demonstrate sufficient good cause for drawing Appellant's blood outside of the two[-]hour rule of 75 Pa.C.S.A. § 3802(g)[?]

Appellant's Brief at 9.

This Court has thoroughly reviewed the record, Appellant's brief, and the opinions of the suppression court and the trial court.[1] We conclude that Appellant is not entitled to relief on either of these issues. With respect to Appellant's suppression-related claim(s), we deny relief based on the well-reasoned opinion of Judge Lovecchio, who presided over Appellant's suppression hearing.[2] *See* Suppression Court Opinion, 5/7/13, at 1-6 (finding that police possessed both reasonable suspicion *and* probable cause to believe that Appellant had committed a DUI offense). With respect to Appellant's sufficiency claim, we deny relief based on the well-reasoned opinion of Judge Gray, who presided over Appellant's non-jury trial. *See* Trial Court Opinion, 9/3/14, at 2-8 (finding that sufficient evidence was presented to satisfy the exception to the two-hour rule set forth in 75 Pa.C.S. § 3802(g)). Accordingly, we affirm on the basis of these opinions.

_____

[1] The Commonwealth declined to file an appellate brief in this matter. Instead, it filed a letter with this court requesting that Appellant's claims be denied based upon the trial court's Rule 1925(a) opinion.

[2] We note, however, that Appellant has waived consideration of part (c) of his first issue due to his failure to raise that claim in his Rule 1925(b) statement. Any issues not raised in a 1925(b) statement will be deemed waived. *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998).

Judgment of sentence **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/20/2015

J-S07010-15

IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,

Plaintiff,                    : DOCKET NO. CR-799-2012

vs.                            :

                               : CRIMINAL

TED EUGENE DYE, JR.,           :

Defendant.                     : 1008 MDA 2014

## OPINION AND ORDER

### Issued Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)

This Court issues the following Opinion and Order pursuant to Pennsylvania Rule of Appellate Procedure 1925(a). This is an appeal from the Court's Order dated May 21, 2014, sentencing defendant on a verdict of guilty of DUI following a non-jury trial held on January 23, 2014.[1]

The Defendant filed his concise statement of matters complained of on appeal raising the following 2 issues for appeal.

1. The Suppression Court erred in finding that the arresting officers had sufficient legal cause to arrest Defendant for driving under the influence. Viewing the facts in the best light for the Commonwealth indicates that the information available to the arresting officers at the time of the contact with Defendant was not sufficient to establish probable cause. Defendant was not found in actual physical control of the motor vehicle. The evidence presented was consistent with Defendant being the passenger in the vehicle.

2. The evidence to support a finding of guilt for Count 2 of the information, Driving under the Influence, middle tier, was insufficient in that the Commonwealth was unable to produce admissible evidence regarding Defendant's blood alcohol level. The State Police did not demonstrate sufficient good cause for not drawing Defendant's blood within two (2) hours of Defendant being in actual physical control of the movement of a motor vehicle.

The Court will address defendant's issues in turn.

---

[1] The trial was presented on a case stated basis. The non-jury verdict was dated January 24, 2014, and filed January 29, 2014. The Court found beyond a reasonable doubt that defendant violated 75 Pa.C.S.A. § 3802(a)(1) under Count 1, an ungraded misdemeanor, and that defendant violated §3802(b), high rate (middle tier), an ungraded misdemeanor under count 2.

1



## 1. The Suppression Court Correctly Found Probable Cause.

In support of the first issue raised by the defendant, whether the Suppression Court correctly found probable cause, this Court respectfully relies upon the Opinion and Order entered by the Honorable Marc F. Lovecchio, dated May 6, 2013 and filed May 7, 2013. Upon review of the transcript from the suppression hearing, it is further noted that Trooper Fye testified that defendant was placed into custody *after* defendant told Fye that **defendant** had been driving the vehicle. Notes of Transcript from Suppression Hearing on 3/28/13, (N.T. 3/28/13, at 49, l. 11-17.)(emphasis added) Therefore, the evidence was not consistent with the defendant being a passenger and this issue appears to be without merit.

## 2. The State Police Demonstrated good cause for not drawing Defendant's blood within two (2) hours of Defendant being in actual physical control of the movement of a motor vehicle.

The second issue raised on appeal is whether the Commonwealth demonstrated good cause under 75 Pa.C.S. § 3802 (g)(1) for drawing the defendant's blood 35 minutes in excess of 2 hours from the time defendant was operating the vehicle.[2] In support of this Court's determination that good cause existed, this Court respectfully relies upon its Verdict on January 24, filed January 29, 2014, the Opinion and Order entered by the Honorable Marc F. Lovecchio,

---

[2] A conviction under 75 Pa.C.S. § 3802(b) requires the Commonwealth to prove that the defendant drove, operated or was in physical control of the movement of "a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% **within two hours** after the individual has driven, operated or been in actual physical control of the movement of the vehicle." (emphasis added). It is undisputed in this case that the blood was drawn 35 minutes in excess of the 2 hours from when the defendant was operating the vehicle. Therefore the question is whether the circumstances fall within the exception to the two hour rule as provided in 75 Pa.C.S. § 3802 (g). 75 Pa.C.S. § 3802 (g) provides an exception to the two-hour rule where 1) the Commonwealth establishes good cause and 2) where the Commonwealth establishes that the individual did not imbibe any alcohol or utilize a controlled substance between the time the individual was arrested and the time the sample was obtained. Defendant has not raised any issue with respect to the second prong requiring the Commonwealth to establish that the defendant did not imbibe alcohol between the time he was arrested and the time the sample was obtained pursuant to 75 Pa.C.S. § 3802 (g)(2). This Court believes that defendant concedes that he did not imbibe alcohol or use controlled substances between the time of arrest and the time the sample was obtained. As the defendant has not raised an issue under the second prong, it has not been addressed in this Opinion and the Court believes it has been waived. *See, e.g.*, Dollar Bank v. Swartz, 657 A.2d 1242, 1245 (Pa. 1995).

2

dated May 6, 2013, and filed May 7, 2013, specifically at 6-9, and the following supplemental opinion.

This Court believes that the Commonwealth has shown good cause for explaining why the chemical sample could not be obtained within two hours. 75 Pa.C.S. § 3802 (g) (1) provides a good-cause exception to the two-hour rule as follows.

> [W]here alcohol or controlled substance concentration in an individual's blood or breath is an element of the offense, evidence of such alcohol or controlled substance concentration more than two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle is sufficient to establish that element of the offense under the following circumstances:
>
> (1) where the Commonwealth shows good cause explaining why the chemical test sample could not be obtained within two hours[. *** ] 75 Pa.C.S. § 3802 (g) (1)

There has not yet been appellate authority directly on point, however, some trial courts have opined that good cause exists where the Commonwealth has established a specific time-frame context for the blood draw and where distance and investigations explain the delay in getting the defendant's blood drawn. For example, in Commonwealth v. Hill, No. 3281/06 (C.P. Berks June 8, 2007), [2007 Pa. D & C. Dec. LEXIS 181], *aff'd* 953 A.2d (Pa. Super. 2008), the trial court concluded that the Commonwealth established good cause for collecting the blood sample 17 minutes after the two-hour period. In Hill, the trooper was 20 minutes away from the accident scene when dispatched. It took her 47 minutes to travel to the processing center. At the accident scene, the trooper interviewed the victim and performed field sobriety tests. The accident scene was 34 miles from the processing center and it took 47 minutes to travel to processing center.

Similarly, in Commonwealth v. McNair, 8 Pa. D. & C.5th 262 (C.P. Fayette 2009), the Court concluded that the Commonwealth established good cause where the blood test occurred at 12:14 a.m. when the time of the accident was estimated to be between 8 and 10 p.m. The police

3

received a dispatch and responded around 11:04 p.m. There was a delay because the parties left the scene of the accident and waited ten to fifteen minutes before contacting the police.

When the Commonwealth fails to establish the time frames involved, however, courts have dismissed the charges. For example, in Commonwealth v. Segida, 2006 PA Super 296; 912 A.2d 841, 848 (Oct. 24, 2006), the Superior Court concluded that the evidence presented was insufficient to support a conviction for DUI. The Commonwealth failed to produce any evidence as to the time of the blood being drawn at the hospital, of drinking by the driver, of driving or of the accident. Segida, 912 A.2d at 845-846. There was no evidence presented from which those times could have reasonably been inferred. Id. The Commonwealth also "failed to preclude the possibility that Appellant ingested alcohol **after** the accident occurred." Segida, 912 A.2d at 847. (emphasis in the original) Similarly, in Commonwealth v. Pophal, No. 8-2011 (C.P. Lycoming June _ 2011), the Court concluded that, without any evidence whatsoever as to when the defendant's blood was drawn, the Court could not determine whether the blood draw was within the 2 hours or "whether there was good cause explaining why the chemical test could not be obtained within two hours."

In the instant case, the Commonwealth established a very specific timeline of pertinent events. The Commonwealth's witness, Tracy Harp, observed the accident from her kitchen window at approximately 8:00 p.m. N.T. 1/23/14 at 5, l. 18-23. Ms. Harp checked on the vehicle which was stuck in a ditch, and asked the defendant whether he wanted her to call 911 and defendant said no. N.T. 1/23/14 at 6, l. 2-9. After about ten minutes, Ms. Harp's daughter contacted Corporal (Corp.) Farber who lived nearby. N.T. 1/23/14 at 6, l.7-9. While off duty, Corp. Farber received the unexpected phone call at about 8:15 p.m. while watching football. Corp. Faber left his home at about 8:25 p.m.to check on the crash and arrived at the accident

4

scene at 8:30 p.m., which was approximately three quarters of a mile from his residence. N.T. 1/23/14 at 5, l. 1-3, and at 7, l. 7, 17-21.

At approximately 8:20 p.m. Pennsylvania State Trooper Christine Fye received a call that an off duty corporal had picked up a gentleman who he believed had crashed a vehicle and ultimately taken him to Trooper Haven's home. N.T. 1/23/14 at 9, line, 15-19. Given the weather and distance, Trooper Fye took 30 to 40 minutes to arrive at Trooper Havens' residence. N.T. 1/23/14 at 9, lines, 1, 15-19. and at 10, line 1. *See also*, Commonwealth Exhibit 1 (40 minutes between dispatch time and arrival time.) Shortly after Corp. Faber arrived, Trooper Fye arrived at Trooper Haven's residence at approximately 8:50 to 9:00 p.m. N.T. 1/23/14 at 9, line 1, at 10, line 1. When Trooper Fye arrived, the defendant was seated in the rear of the ambulance with EMS personnel. N.T. 1/23/14 at 10, line 4-5.

The ambulance left Trooper Havens' residence at approximately 9:30 p.m. N.T. 1/23/14 at 11, line, 10-11. The defendant "was taken by EMS to the Williamsport Hospital for possible hypothermia/frostbite where he received treatment." *See, Commonwealth Exhibit 1*, Police Crash Report, page 4. There is no information as to what time the ambulance pulled into the E.R. which is located in the same building as the DUI Processing Center. N.T. 1/23/14 at 15. However, defendant arrived at the DUI Center for processing at approximately 10:15 p.m. N.T. 1/23/14 at 11, line 13. At the DUI Center, defendant answered general intake booking questions and received the Section 1547 Chemical Testing Warnings. N.T. 1/23/14 at 13, line 3-6. Defendant appeared confused about the warnings and asked a lot of questions before signing the form DL 26 and agreeing to submit to a blood sample. N.T. 1/23/14 at 13, line 6-10. Defendant submitted a blood sample at 10:35 p.m. N.T. 1/23/14 at 13, l, 13.

In addition to providing ample evidence of a specific timeline of events, the Commonwealth also established a several variables that led to the blood draw occurring outside

5

the 2-hour window: the inclement weather, the distances travelled, the off duty nature of the encounter with defendant, and defendant's own actions. As to the inclement weather, the snowy, icy and slippery roads[3] slowed travel for all involved with investigating the scene of the accident and in transporting the defendant that evening. Furthermore, the severe cold and icy weather created an added concern for the medical needs of the defendant, as well as any other potential driver, passenger or victim. In the extreme cold, snowy weather and on the icy road, the off duty Corp. Farber encountered the defendant walking, with blood on his hands and shirt, "in a tee shirt, blue jeans, one foot was barefoot, and one just had a sock on[.]" N.T. 3/28/13 at 8, l. 25; at 9, l. 16-23. Therefore, Corp. Farber's priority was getting the defendant to a warm place and securing defendant's safety. N.T. 3/28/13 at 19.

Another variable was the fact that the Corp. Farber became involved in this matter while off duty. Corp. Faber had to get ready, warm up his private vehicle and clear the snow accumulation from his vehicle before going to the scene of the accident upon receiving the unexpected request. Since Corp. Farber was off duty, Corp. Farber had no handcuffs, no Taser, no way to subdue the defendant if needed. After encountering the defendant, Corp. Farber did not know how long defendant would remain cooperative, especially once he realized that Corp. Farber suspected defendant of DUI. This impacted the decision about how and when to report the DUI, and where to take the defendant. Seeing the way defendant was dressed in the extreme cold, Corp. Faber's priority was to get defendant inside a warm place without risking his own safety. N.T. 3/28/13 at 19. Being off duty and alone, Corp. Farber took extra-time to check the defendant before allowing him into his personal vehicle. N.T. 3/28/13 at 10, 13-15. In addition, Corp. Faber attempted to drop defendant off at defendant's friend's house with the intent of reporting the accident once he dropped defendant off, depending upon the level of

---

[3] It should be noted that the accident occurred on a rural secondary road. See, Commonwealth's Exhibit 1.

6

resistance exhibited by the defendant. N.T. 3/28/13 at 13. Since no one was home at defendant's friend's house, Corp. Faber drove back to Ms. Harp's residence and reported the accident from there and contacted Trooper Havens for assistance. N.T. 3/28/13 at 14. Corp. Faber then brought defendant to Trooper's Havens' nearby residence. N.T. 3/28/13 at 15. From there defendant was taken by ambulance to the E.R.

Another significant variable was defendant's own actions which delayed the blood draw. The defendant refused to call 911 and left the scene of the accident. N.T. 1/23/14 at 6, lines 5-9. The defendant falsely stated to police that another individual had been driving the vehicle. N.T. 3/28/13 at 11, l. 20; N.T. 1/23/14 at 8, line 7-8, at 10, lines 7-8. As a result, there was a concern that someone else could be injured or in need of assistance or abandoned in the extreme cold. N.T. 3/28/13 at 11, l. 20; N.T. 1/23/14 at 10, lines 7-15. In addition, the defendant walked from the scene of the accident without shoes and wearing only a t-shirt, despite the extreme cold. N.T. 3/28/13 at 8, l. 25; at 9, l. 16-23. Consequently, the defendant required immediate attention to ensure his well-being and required medical treatment at the ER. At the DUI center, defendant's responses were slow. Defendant required repeated questioning prior to understanding and providing consent to draw his blood. N.T. 1/23/14 at 13, line 6-10. Thus, extra time was necessary to ensure proper and informed consent.

Given the timelines established and all of the variables at play, the Court believes the Commonwealth established good cause for obtaining the blood sample 35 minutes outside the 2 hour time period. With the benefit of hindsight, defendant speculates that if Trooper Fye had followed behind the ambulance, rather than observing the crash site to which she was assigned, the two-hour time window could have been met. No doubt, one could conceive ways that it may have been possible to secure a blood draw within the two-hour window. However, the Court does not believe that the Commonwealth is required to show that the first responders and

arresting officers did absolutely everything possible to get the defendant to submit to a blood draw within the two-hour window to establish good cause. This is especially true where the defendant's own actions, in addition to a confluence of variables, caused delay and where it is conceded that defendant did not imbibe in alcohol or use controlled substances between the time of the accident and the blood draw. The Court believes the Commonwealth established good cause and that all responders acted with due diligence in the midst of many variables in order to properly and promptly attend to all urgent needs arising from a DUI crash on an extremely cold, snowy and icy night.

## Conclusion

For these reasons, and those provided in this Court's non-jury verdict and those provided in the Opinion of the Suppression Court, this Court respectfully requests that the verdict and sentence be affirmed.

BY THE COURT,

Date    September 3, 2014

Richard A. Gray, J.

cc:    District Attorney's Office (AC)
      Kyle W. Rude, Esq.
      Superior Court (& 1)

8

IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA

COMMONWEALTH : No. CR-799-2012

vs. : CRIMINAL DIVISION

TED DYE, JR.,
    Defendant :

## OPINION AND ORDER

This case came before the court on March 28, 2013 for a hearing and

argument on Defendant's omnibus pretrial motion, which consisted of a motion to suppress, a

motion to dismiss Count 2 DUI on the basis that the blood draw did not occur within two

hours, a motion for discovery, and a motion to reserve right to file additional motions.[1]

At approximately 8:15 on January 14, 2012, Corporal Derron Farber's

neighbor, Mrs. Harp, had her daughter call Corporal Farber, who was at home and off duty,

about a one-vehicle crash that occurred diagonally across the road from her residence.[2]

Defendant was the sole occupant of the vehicle.

Within ten minutes of receiving the phone call, Corporal Farber left his

residence and drove toward the Harp residence. Corporal Farber was not in uniform and he

was driving his personal vehicle. It was an extremely cold and snowy night. When he came

---

[1] At the hearing on Defendant's motion, defense counsel essentially indicated that the discovery motion was moot when he stated he thought he was "fine with discovery." Since the motion to reserve right was based on the possibility of additional discovery, the court believes both the discovery motion and the motion to reserve the right to file additional motions are moot.

[2] The parties stipulated that if called to testify Mrs. Harp would testify that she observed a vehicle crash diagonally across the street from her home. She saw Defendant, who was the only occupant, exit the vehicle. Within five minutes or less after the crash, she had her daughter call Corporal Farber, because she could not due to a hearing disability. Corporal Farber also explained in his testimony that he was called because his daughter was friends with Mrs. Harp's daughter.

1

upon the accident scene, which was about 50 to 100 feet past the Harp residence, he observed a dark-colored pick-up truck down in a ditch off the side of the road with the driver's side door open. Corporal Farber exited his vehicle and looked around. He saw one set of footprints leading out of the ditch away from the truck, but no one was in or around the vehicle.

As Corporal Farber was heading back to his house to call in the accident, he came across Defendant walking in the roadway about two-tenths or three-tenths of a mile from the truck. Defendant was wearing a t-shirt and jeans, but he was not wearing a coat or any shoes; one foot was bare and the other foot just had a sock on it. There also was some blood on Defendant's hands. Corporal Farber asked Defendant if he was okay, where he was headed, and if he wanted a ride. Defendant indicated he was trying to get to a friend's house. Corporal Farber asked Defendant to stand in front of his vehicle's headlights to show him that he did not possess anything capable of causing injury before he got into the vehicle. Defendant stood in front of the headlights and pulled up his shirt. When Defendant got into the vehicle, Corporal Farber noticed that Defendant distinctly smelled of alcohol, he had bloodshot and glassy eyes, and his speech and mannerisms were very slow.

Although Corporal Farber believed Defendant had been driving under the influence of alcohol, he did not ask him for his license or registration.

While they were headed to Defendant's friend's house, Defendant told Corporal Farber that his fifteen year old daughter had died that day in Florida. Corporal Farber sympathized, but then made comments to Defendant that he needed to be careful and he should not compound things by driving while he was intoxicated. Corporal Farber

2

admitted that he implied that Defendant had been driving, thinking that Defendant would give a statement. Defendant, however, indicated that his girlfriend had been driving. Corporal Farber then asked Defendant where his girlfriend was, and Defendant said she had gone home.

When they arrived at the friend's home, Corporal Farber went to the door with Defendant, but no one was home. They got back in the vehicle and drove to the Harp residence, where Corporal Farber used the phone to call the accident in to the State Police Barracks. Then he called Trooper Havens, who also lived in the area, for assistance because Corporal Farber did not have any handcuffs with him. Trooper Havens told Corporal Farber to bring Defendant to his house, because Defendant knew Trooper Havens. They waited at Trooper Haven's residence until uniformed State Police officers and an ambulance arrived.

When Trooper Christine Fye and Trooper Eric Barlett arrived at Trooper Havens' residence at approximately 8:50 p.m., Defendant was sitting in the rear of an ambulance in the driveway. Trooper Fye interviewed Defendant about the accident. Defendant claimed his wife was driving and crashed the vehicle. Like Corporal Farber, Trooper Fye asked Defendant where this woman was, because she was concerned for her well-being. Within ten minutes, however, Defendant admitted that he was driving the vehicle and he had hit a patch of ice. Defendant also admitted he had been drinking. He was crying, and he said his daughter died earlier in the day. Trooper Fye noticed a very strong odor of alcohol inside the ambulance. She also observed that Defendant's eyes were very bloodshot and his speech was slurred and confused. Trooper Fye did not ask Defendant to perform field sobriety tests due to the snow on the ground. She formed an opinion that Defendant was

3

under the influence of alcohol to a degree which rendered him incapable of safe driving. She told Defendant he was in custody or under arrest and she would follow him to the hospital and request a blood draw.

Trooper Barlett went to the scene of the crash to gather information for the accident report and to wait for a tow truck to pick up the vehicle. He saw a large truck in a ditch, with only one set of footprints leading away from it. He looked inside the vehicle for insurance and registration information. He saw an orange prescription bottle inside the truck, but he did not see any bottles or cans that would have contained alcohol.

Defendant was charged with DUI- incapable of driving safely, DUI- highest rate of alcohol, and two summary traffic offenses.

Defendant first argued that the evidence seized as a result of the investigation by the police should be suppressed because there was no probable cause or reasonable suspicion to believe Defendant was engaging in any criminal activity and there was no probable cause to request Defendant to submit to chemical testing. The Court cannot agree.

"To establish reasonable suspicion, the officer must 'articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him to reasonably conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." Commonwealth v. Caban, 60 A.3d 120 (Pa. Super. 2012)(citations omitted). The reasonable suspicion standard is less stringent than probable cause. Commonwealth v. Rogers, 578 Pa. 127, 849 A.2d 1185, 1189 (2004). In determining whether reasonable suspicion exists, the court must give due consideration to the reasonable inferences a police officer is entitled to draw from the

4

facts in light of his experience. Id. The court is not limited to considering only those facts that clearly indicate criminal conduct, because even innocent facts when taken together may warrant a police officer investigating further. Id., citing Commonwealth v. Cook, 558 Pa. 50, 735 A.2d 673, 676 (1999). In comparison,

> Probable cause is made out when "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." The question is not whether the officer's belief was 'correct or more likely true than false.' Rather, we require only a 'probability, and not a prima facie showing, of criminal activity.' In determining whether probable cause exists, we apply a totality of the circumstances test.

Commonwealth v. Thompson, 604 Pa. 198, 985 A.2d 928, 931 (2009)(citations omitted).

The Court finds that the police had both reasonable suspicion and probable cause to believe that Defendant had committed the offense of driving under the influence of alcohol. There was a one-vehicle accident where a pick-up truck went off the roadway and into a ditch. There was only one set of footprints leading away from the truck. Within fifteen minutes or less of the accident, Corporal Farber came across Defendant walking in the roadway and Defendant's hands had blood on them. Defendant was only wearing jeans, a t-shirt, and one sock. In other words, Defendant looked as if he had been involved in some sort of accident.

Corporal Farber asked Defendant if he was okay and if he wanted a ride. Corporal Farber was not on duty and was merely being a Good Samaritan by trying to make sure Defendant was okay and to get him out of the extremely cold and snowy weather. When Defendant got into Corporal Farber's vehicle, Corporal Farber noticed that Defendant

5

distinctly smelled of alcohol, his eyes were bloodshot and glassy, and his speech and mannerisms were very slow. There were no empty alcoholic beverage containers in or around the truck.

Given the totality of the circumstances, the police clearly had reasonable suspicion to believe Defendant was the driver of the truck and to investigate whether he had been driving under the influence of alcohol.

After on-duty State Police Troopers arrived to investigate the accident, Defendant admitted that he was the driver of the truck and that he had been drinking.

In viewing the totality of these circumstances, a reasonable person would believe that Defendant had been the driver of the truck that went off the roadway and he was under the influence of alcohol, giving rise to both reasonable suspicion and probable cause that Defendant had committed a DUI offense. The police had ample basis to request Defendant to submit to chemical testing. Whether Defendant lost control of the truck due to the bad weather, his alcohol consumption, or both are issues for trial.

Defendant next asserted that Count 2, DUI- highest rate of alcohol should be dismissed because Defendant's blood was not drawn within two hours and no exception applies. The Court cannot agree.

Relying on this Court's decision in Commonwealth v. Pophal, Lyc. Cty No. CR-8-2011, Defendant first argued that his motion must be granted because the Commonwealth failed to present any testimony regarding when his blood was drawn. In his verified motion, however, Defendant states, "The police arrived at the scene at approximately 8:15 p.m. Blood was drawn at 10:35 p.m., more than two hours later." Omnibus Motion, ¶

6

16. Statements of material fact contained in pleadings constitute admissions. See Commonwealth v. Hanford, 937 A.2d 1094, 1098 (2007). Therefore, Pophal is distinguishable.

The Court also finds that the evidence presented at the hearing and the reasonable inferences to be drawn therefrom established both requirements for the statutory exception. Section 3802(g) of the Vehicle Code provides an exception to the two-hour rule, which states:

> Notwithstanding the provisions of subsection (a), (b), (c), (e) or (f), where alcohol or controlled substance concentration in an individual's blood or breath is an element of the offense, evidence of such alcohol or controlled substance concentration more than two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle is sufficient to establish that element of the offense under the following circumstances:
> (1)     where the Commonwealth shows good cause explaining why the chemical test sample could not be obtained within two hours; and
> (2)     where the Commonwealth establishes that the individual did not imbibe any alcohol or utilize a controlled substance between the time the individual was arrested and the time the sample was obtained.

75 Pa.C.S. §3802(g).

Trooper Fye testified that she received the dispatch about this incident at approximately 8:19 p.m. Due to the location of the incident and the bad weather, she did not arrive at Trooper Havens' residence until 8:50 or 9:00 p.m. Therefore, it took Trooper Fye thirty (30) or forty (40) minutes to travel from the Montoursville State Police Barracks to Trooper Havens' residence.

Trooper Fye and Trooper Barlett investigated the accident for about twenty minutes before Defendant was placed in custody or arrested for DUI.

Approximately ten minutes thereafter, Defendant was transported by ambulance to the Williamsport Hospital. Therefore, the ambulance did not leave Trooper Havens' residence until about 9:30 p.m.

One can infer that it would take the ambulance a similar amount of time to drive back to the hospital as it took Trooper Fye to arrive at Trooper Havens' residence. Thus, it appears that Defendant did not arrive at the hospital until after 10:00 p.m.

Defendant was taken to the hospital as a precaution. It is likely that hospital personnel would make sure Defendant did not need any further medical treatment before they would conduct the blood draw. Defendant's blood was drawn at 10:35 p.m.

One can also infer that Defendant did not consume any alcohol following his arrest, because Defendant was in the back of an ambulance in the presence of EMS personnel on his way to the hospital and then actually at the hospital from the time he was placed in custody until his blood was drawn.

Based on the foregoing discussion, the Court finds that the evidence and the reasonable inferences that could be drawn therefrom are sufficient at this stage of the proceedings to deny Defendant's motion to dismiss Count 2. Whether the jury will actually draw those inferences will be an issue at trial.

8

# **O R D E R**

AND NOW, this _6_ day of May 2013, the Court DENIES Defendant's omnibus pretrial motion.

By The Court,

Marc F. Lovecchio, Judge

cc:  Anthony Cuica, Esquire (ADA)
     Edward J. Rymsza, Esquire
     Gary Weber, Esquire
     Work file

9