J-S19032-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BRIAN FORMAN | : | |
| | : | |
| Appellant | : | No. 466 EDA 2017 |

Appeal from the Judgment of Sentence January 12, 2017
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.:  CP-51-CR-0007846-2015

BEFORE:   SHOGAN, J., NICHOLS, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                    **FILED AUGUST 16, 2018**

Appellant, Brian Forman, appeals from the judgment of sentence imposed on January 12, 2017, following his jury conviction of one count each of aggravated assault and recklessly endangering another person (REAP).[1] On appeal, Appellant challenges the sufficiency and weight of the evidence, and the denial of his motion for a mistrial.  For the reasons discussed below, we affirm the judgment of sentence.

We take the underlying facts and procedural history in this matter from the trial court's June 28, 2017 opinion and our independent review of the certified record.

_____

[1]  18 Pa.C.S.A. §§ 2702(a) and 2705, respectively.

_____

*   Retired Senior Judge assigned to the Superior Court.

On May 27, 2015, Appellant became involved in a verbal altercation with Alexander Gonzalez Marinucci,[a] in front of the family home, a row house on North Lambert Street in Philadelphia. At some point Alexander turned away from Appellant, who then [punched] him from behind, striking Alexander in the side of the face. A fistfight between Appellant and Alexander then ensued. [(**See** N.T. Trial, 9/14/16, at 26-27, 86, 144, 160-61)]. Neighbors gathered. [(**See id.** at 34-35, 91-92)]. Alexander's mother, Theresa Marinucci, exited their home and attempted to stop the fight. [(**See id.** at 27, 87)]. Arnaldo, the oldest brother, also exited the home and attempted to broker a [fair, one-on-one] fistfight. [(**See id.** at 28-29, 37, 88, 93, 148-49, 175, 178, 181)].

[a] Because there were three Gonzalez/Marinucci brothers involved in these events, [the trial court refers] to them by their first names for clarity.

During the course of the fight, [David Edwards], a man in a black hat who accompanied Appellant, also attempted to intervene in the fight. [(**See id.** at 29, 35, 88, 91, 145, 148)]. At some point, Alexander threw Appellant over a low fence and to the ground. [(**See id.** at 28, 37, 91, 146)]. Appellant accused Arnaldo of having a weapon. [**See id.** at 29, 38, 40, 93, 96, 184-85]. Appellant then left the scene with [Edwards], saying he was going to get a gun. [(**See id.** at 29-30, 40-41, 97, 107, 153-54, 164)]. The neighbors started yelling that Appellant was going to get a gun and urging the Marinucci[]s to get in their house, which they did. [(**See id.** at 30, 151, 154-55, 168, 186)]. In addition to Theresa, Alexander and Arnaldo, Antonio Marinucci and Theresa's boyfriend were in the house. [(**See id.** at 84-85, 166)].

Shortly thereafter, Appellant and [Edwards] returned and Appellant began banging on the Marinucci[s'] front door as he attempted to open the security gate. Theresa Marinucci looked out through the peep[]hole and saw Appellant and [Edwards]. [(**See id.** at 43-44, 100, 105, 107-08, 123)]. She saw the handle of a gun in Appellant's waistband, then saw him point the gun toward the house. [(**See id.** at 45-47, 106, 123)]. Arnaldo also saw Appellant reaching under his shirt as though he had a weapon. [(**See id.** at 188-90)]. As Appellant did this, [Edwards], who also had a gun, started to back up and run to[wards] the middle of the street, walking sideways down the street from the house. [(**See id.** at 127-29, 132-33)]. Theresa then heard two

gunshots, followed by three more gunshots. [(**See id.** at 30-31, 47)].

     There were two bullet holes in the kitchen window, bullet strikes up near the front bedroom window and on a brick wall, and in a cabinet and a laundry room door inside the house[. (**See id.** at 52-54, 125, 127; **see also** N.T. Trial, 9/15/16, at 47-48, 57-59)]. Four fired cartridge cases were recovered from the scene. All four were fired from the same weapon. [(**See** N.T. Trial, 9/15/16, at 49, 58-59, 81, 83)].

     Police responded to the [victims'] calls to 9-1-1. [(**See** N.T. Trial, 9/14/16, at 47, 50)]. A short time later, Appellant and [Edwards] were stopped by police. Appellant was not in possession of a weapon. [(**See** N.T. Trial, 9/15/16, at 24, 33, 37-38)]. Theresa was transported to the scene where she identified both men. [(**See** N.T. Trial, 9/14/16, at 50-51, 89-90)]. Appellant was charged, [Edwards] was not. [(**See** N.T. Trial, 9/15/16, at 112)].

     Several days after the incident, a woman identifying herself as Appellant's wife approached Theresa Marinucci, explained that Appellant was just drunk and asked Theresa to drop the charges, offering her $300[.00] and other services to do so. [(**See** N.T. Trial, 9/14/16, at 69-72)]. Several days later[,] the woman repeated this offer to Theresa. [(**See id.** at 74-75)].

(Trial Court Opinion, 6/28/17, at 2-3).

On August 11, 2015, the Commonwealth filed a criminal information charging Appellant with aggravated assault, REAP, and a variety of weapons and other offenses. A jury trial took place beginning on September 13, 2016. On September 16, 2016, the jury convicted Appellant of aggravated assault and REAP, but acquitted him of the other charges. On January 11, 2017, Appellant filed a motion for extraordinary relief seeking a judgment of acquittal or, in the alternative, a new trial. The trial court denied the motion on January 12, 2017.

On January 12, 2017, following receipt of a pre-sentence investigation report, the trial court sentenced Appellant to an aggregate term of incarceration of not less than eight nor more than twenty years. The instant, timely appeal followed. On January 31, 2017, the trial court directed Appellant to file a concise statement of errors complained of on appeal. **See** Pa.R.A.P. 1925(b). Appellant filed a timely Rule 1925(b) statement on February 21, 2017. **See id.** On June 28, 2017, the trial court issued an opinion. **See** Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review.

[1.] Is the evidence sufficient as a matter of law to support the conviction for criminal aggravated assault as set forth in 18 Pa.C.S.A. § 2702(a) graded as a felony of the first degree[?]

[2.] Is the verdict of guilty with respect to the charge of aggravated assault as set forth in 18 Pa. C.S.A. §2702(a), graded as a felony of the first degree, against the weight of the evidence and so contrary to the evidence that it shock's one's sense of justice[?]

[3.] Did the trial court err and/or abuse[] its discretion where it denied [Appellant's] motion for a mistrial based upon a police detective's improper and unwarranted comment upon [Appellant's] post-arrest silence in response to a direct question from the assistant district attorney?

(Appellant's Brief, at 7-9) (subparts omitted).

Appellant challenges the sufficiency of the evidence underlying his conviction for aggravated assault.[2]  (**See id.** at 23-31).  Our standard of review for sufficiency of the evidence claims is well settled:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, **when viewed in a light most favorable to the Commonwealth as verdict winner**, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented.  It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder.  The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

**Commonwealth v. Tarrach**, 42 A.3d 342, 345 (Pa. Super. 2012) (citation omitted) (emphasis added).

The crime of aggravated assault occurs when a person "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]"  18 Pa.C.S.A. § 2702(a)(1).  An aggravated assault also takes place when an individual "attempts to cause or intentionally

_____

[2] Appellant does not challenge the sufficiency of the evidence underlying his conviction for REAP.  (**See** Appellant's Brief, at 23-31).

or knowingly causes bodily injury to another with a deadly weapon[.]" 18 Pa.C.S.A. § 2702(a)(4).

The Crimes Code defines "[s]erious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. "Bodily injury," is defined as "[i]mpairment of physical condition or substantial pain." *Id.*

In the context of Section 2702, attempt "is demonstrated by proving that the accused acted in a manner which constitutes a substantial or significant step toward perpetrating serious bodily injury upon another along with the intent to inflict serious bodily injury." *Commonwealth v. Gruf*, 822 A.2d 773, 776 (Pa. Super. 2003), *appeal denied*, 863 A.2d 1143 (Pa. 2004) (citation omitted). We can sustain a conviction for aggravated assault regardless of whether any serious bodily injury actually occurred. *See id.*

Additionally, when an assault takes place but the assailant does not inflict serious bodily injury, "the charge of aggravated assault can be supported only if the evidence supports a finding that the blow delivered was accompanied by the intent to inflict serious bodily injury." *Commonwealth v. Alexander*, 383 A.2d 887, 889 (Pa. 1978). The Commonwealth can prove intent through direct or circumstantial evidence. *See id.* We can consider whether the attacker was disproportionately larger or stronger than the victim; whether the attacker escalated the attack; whether the attacker used

a weapon to aid in his attack; and any statements made by the attacker. ***See id.***; ***see also Commonwealth v. Jackson***, 955 A.2d 441, 446 (Pa. Super. 2008), *appeal denied*, 967 A.2d 958 (Pa. 2009).

Initially, we note Appellant's sufficiency claim is less a claim that the Commonwealth did not make out the elements of the offense than a claim that the jury should have credited his theory that Edwards was the shooter and not the testimony of Theresa Marinucci. (***See*** Appellant's Brief, at 23-28). However, an argument that the finder of fact should not have credited a witness's testimony goes to the weight, not the sufficiency of the evidence. ***See Commonwealth v. W.H.M., Jr.***, 932 A.2d 155, 160 (Pa. Super. 2007) (claim that jury should not have believed victim's version of events goes to weight, not sufficiency of evidence).

Moreover, as discussed above, the evidence demonstrated that Appellant got into a fight with Alexander. Appellant, getting the worst of the fight, left the scene, saying he was going to get a gun. He and Edwards then returned to the scene, and Appellant began to bang on the Marinuccis' front door and attempted to pry open the security gate. Theresa Marinucci saw Appellant reach for the handle of a gun stored in the waist of his pants. She then observed Appellant back away from the door, pull the gun, and aim it. She did not see him shoot, but immediately after he aimed the gun, she heard five pops. While Theresa Marinucci also saw Edwards with a gun, she did not see him pull it or aim it and he was backing away from the house and going

towards the street at the time of the shooting. This evidence was sufficient to sustain Appellant's conviction for aggravated assault. ***See Commonwealth v. Hunter***, 644 A.2d 763, 764 (Pa. Super. 1994), *appeal denied*, 668 A.2d 1125 (Pa. 1995) (holding evidence sufficient to sustain conviction for aggravated assault where appellant fired gunshots into residence he knew to be occupied because, "[t]he intent to do serious bodily harm can be inferred in the act of discharging a firearm into an occupied home.").

Further, Appellant claims, without substantiation, that the jury's acquittal of him on the weapons offense must mean that they did not believe he was the person who shot at the home, otherwise the verdict is inconsistent. (***See*** Appellant's Brief, at 28). However, the Pennsylvania Supreme Court has held that "a mere facial inconsistency in verdicts is not a valid basis upon which to upset a conviction which is otherwise proper, since consistency in verdicts is not required." ***Commonwealth v. Magliocco***, 883 A.2d 479, 492 (Pa. 2005) (citation and footnote omitted); ***see also Commonwealth v. Rakowski***, 987 A.2d 1215, 1220 (Pa. Super. 2010), *appeal denied*, 9 A.3d 629 (Pa. 2010) (holding that inconsistent verdict is not basis for reversal). Accordingly, Appellant's sufficiency of the evidence claim fails.

In his second issue, Appellant challenges the weight of evidence. (**See** Appellant's Brief, at 31-35).[3] Our scope and standard of review of a weight of the evidence claim is as follows:

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.
>
> As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.
>
> Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

**Commonwealth v. Boyd**, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and quotation marks omitted). "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." **Commonwealth v. Diggs**, 949 A.2d 873, 879-80 (Pa. 2008), *cert. denied*, 556 U.S. 1106 (2009) (citation omitted).

---

[3] Appellant does not challenge the weight of the evidence underlying his conviction for REAP. (**See** Appellant's Brief, at 31-35). Appellant preserved his weight of the evidence claim by filing a post-trial motion.

In its Rule 1925(a) opinion, the trial court stated:

> Although there were inconsistencies in the Marinuccis' testimony, they mainly involved issues of who was standing where, the order of certain events or the completeness of prior statements. The core facts giving rise to the conviction were not in material dispute, and the jury reconciled unessential discrepancies. The [trial c]ourt's conscience was in no way shocked by the verdict of guilty on the aggravated assault charge, which was not at all contrary to the weight of the relevant credible evidence.

(Trial Ct. Op., at 8); *see Commonwealth v. Griscavage*, 517 A.2d 1256, 1259 (Pa. 1986).

"[I]t is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." *Commonwealth v. Lee*, 956 A.2d 1024, 1029 (Pa. Super. 2008), *appeal denied*, 964 A.2d 894 (Pa. 2009) (citation omitted). This Court cannot substitute our judgment for that of the finder of fact. *See Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013), *cert. denied*, 134 S.Ct. 1792 (2014). Here the jury chose to credit the Commonwealth's theory of the case and not Appellant's; the trial court found that this decision did not shock its conscience; thus, this issue does not merit relief.

In his third claim, Appellant contends the trial court erred in denying his motion for a mistrial after a police witness commented on Appellant's post-arrest silence. (*See* Appellant's Brief, at 36-44). However, Appellant waived this claim.

This Court has stated that, "[i]n order to preserve a claim of prosecutorial misconduct for appeal, a defendant must make an objection and move for a mistrial." **Commonwealth v. Sasse**, 921 A.2d 1229, 1238 (Pa. Super. 2007), *appeal denied*, 938 A.2d 1052 (Pa. 2007) (citation omitted); **see also Commonwealth v. Manley**, 985 A.2d 256, 267 n.8 (Pa. Super. 2009), *appeal denied*, 996 A.2d 491 (Pa. 2010) (noting that where defendant objects and trial court sustains objection, failure to request either curative instruction or mistrial constitutes waiver on appeal).

During Detective Steve Jefferson's testimony, the Commonwealth asked the detective what occurred after the detective took statements from the victim. Detective Jefferson answered:

A. After I took the statements from them, they signed the photographs. I reviewed all the statements that were taken. I believe there was another detective that did interviews, and I wanted to speak with [Appellant] to hear his side of the story about what happened.

Q. And did you have an opportunity to do that?

A. No. [Appellant] did not want to talk to me.

[Defense Counsel]: Objection.

THE COURT: Sustained. Let me see counsel at sidebar.

(N.T. Trial, 9/15/16, at 65). The sidebar discussion was off-the-record. Following, the discussion, the Commonwealth continued to question the witness and defense counsel subsequently cross-examined him. (**See id.** at 66-76). The Commonwealth then called another witness, and both sides

- 11 -

questioned him. (***See id.*** at 76-90). The court then broke for lunch. (***See id.*** at 90-91).

At that time, a discussion took place on-the-record regarding the nature of defense counsel's objection to the question asked of Detective Jefferson; and whether an instruction to the jury would cure any prejudice. (***See id.*** at 91-94). At no point during this discussion, did defense counsel move for a mistrial or indicate in any manner that he had moved for a mistrial during the sidebar conference. (***See id.***). The trial court never mentioned any motion for a mistrial and never ruled on any such motion. (***See id.***).

Following the lunch recess, the trial court informed counsel that it would issue an instruction to the jury and both parties agreed to the language of the instruction. (***See id.*** at 108-09). The trial court then charged the jury as follow:

> . . . [T]here was testimony from Detective Jefferson that [Appellant] chose not to speak to the police. I instruct you that [Appellant] and everyone has an absolute right based upon the United States and Pennsylvania Constitutions to remain silent. You are not to hold that against him in any way. All right.

(***Id.*** at 110). Appellant did not object to the instruction.

Thus, while Appellant objected and the trial court sustained his objection, Appellant does not identify the location in the record on appeal where he moved for a mistrial (and in fact claims it happened *dehors* the record), or sought other relief, and our review of the record for this purpose likewise did not identify any such action. ***See*** Pa.R.A.P. 2119(e); (***see also***

Appellant's Brief, at 36-44). Because Appellant did not preserve this issue in the trial court, he has waived it for purposes of appeal. *See Manley*, *supra* at 267 n.8; *Sasse*, *supra* at 1238.

Moreover, the claim is without merit. The following standards govern our review of the denial of a motion for mistrial:

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Commonwealth v. Jaynes*, 135 A.3d 606, 615 (Pa. Super. 2016), *appeal denied*, 145 A.3d 724 (Pa. 2016) (citation omitted). "A mistrial is an extreme remedy that is required only where the challenged event deprived the accused of a fair and impartial trial." *Commonwealth v. Smith*, 131 A.3d 467, 475 (Pa. 2015), *cert. denied*, 137 S.Ct. 46 (2015) (citation omitted). "The trial

court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion." ***Commonwealth v. Parker***, 957 A.2d 311, 319 (Pa. Super. 2008), *appeal denied*, 966 A.2d 571 (Pa. 2009) (citation omitted).

> Further, this Court has stated:
>
> If the Commonwealth mentions a defendant's post-arrest silence, the court might still be able to cure any prejudice through prompt and adequate curative instructions. To evaluate whether cautionary instructions can cure a reference to a defendant's post-arrest silence, courts must consider 1) the nature of the reference to the defendant's silence; 2) how it was elicited; 3) whether the district attorney exploited it; and 4) the promptness and adequacy of the cautionary instructions. If the reference to the defendant's post-arrest silence was such that it incurably compromised the jury's objectivity and would deprive the defendant of a fair trial, then the court should grant a mistrial.

***Commonwealth v. Moury***, 992 A.2d 162, 176 (Pa. Super. 2010) (internal citations, quotation marks, and footnote omitted).

In this case, Detective Jefferson's reference to Appellant's post-arrest silence was brief and fleeting. His answer was in response to a series of questions about the what events took place after Detective Jefferson interviewed the victim. (***See*** N.T. Trial, 9/15/16, at 650. These questions were not meant to elicit a response regarding Appellant's post-arrest silence. Instead, Detective Jefferson, merely narrated what actions he took on the evening in question, which including an attempt to interview Appellant; however, Appellant was unwilling to speak to him. The Commonwealth did

- 14 -

not exploit Appellant's post-arrest silence. It did not continue questioning Detective Jefferson about the subject. Finally, the trial court gave a complete curative instruction. "[A] mistrial is not necessary where the [trial court's] cautionary instructions are adequate to overcome any possible prejudice." *Commonwealth v. Rega*, 933 A.2d 997, 1016 (Pa. 2007), *cert. denied*, 552 U.S. 1316 (2008) (citation omitted). Further, "[w]hen the trial court provides cautionary instructions to the jury in the event the defense raises a motion for a mistrial, [t]he law presumes that the jury will follow the instructions of the court." *Parker*, *supra* at 319 (citation and internal quotation marks omitted). Thus, we find that all four factors weigh in favor of finding that the trial court's instruction cured any prejudice Appellant may have suffered as a result of Detective Jefferson's statement. Therefore, even if Appellant had preserved the claim, we would conclude that the trial court did not abuse its discretion in denying Appellant's motion for mistrial.

Appellant's issues are either waived or lack merit. Thus, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Nichols did not participate in the consideration or decision of this case.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 8/16/2018*