J-S23009-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DENNIS WARREN SHRECENGOST, | |
| Appellant | No. 828 WDA 2018 |

Appeal from the Judgment of Sentence Entered May 3, 2018
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0004967-2017

BEFORE:  BENDER, P.J.E., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    FILED JUNE 18, 2019

Appellant, Dennis Warren Shrecengost, appeals from the judgment of sentence of 15-30 days' incarceration and six months' probation, imposed after he was convicted of driving under the influence of alcohol or controlled substance (DUI)—high rate of alcohol, 75 Pa.C.S. § 3802(b), and DUI-general impairment, 75 Pa.C.S. § 3802(a)(1).  We affirm.

The trial court summarized the factual background of this case as follows:

> The evidence presented at trial established that on ... February 11, 2017, Corporal Michael Markey and Trooper [Thomas] Lizik of the Pennsylvania State Police were conducting a traffic stop on State Route 28.  After taking an individual into custody on that stop, they were driving [n]orth on [Route] 28 to return to the barracks when they observed several individuals in dark clothing running across the roadway.  Corporal Markey was in the passenger seat

_____

[*] Retired Senior Judge assigned to the Superior Court.

and used the [Public Address (PA) system] to order the individuals to be seated on the guide rail. [Corporal] Markey noticed a vehicle in the berm of the [s]outhbound lanes, [and] the vehicle was facing [n]orth. He approached the four individuals[,] and [Appellant], who appeared to be under the influence of alcohol, admitted that he was the owner, and driver, of the vehicle parked on the berm on the [s]outhbound lanes. Because [Corporal Markey] and Trooper Lizik were responsible [for] transporting a prisoner, [h]e called for another trooper to be dispatched to continue the investigation. While waiting for additional troopers, [Appellant] told Trooper Lizik that he was driving southbound, that he had just run out of gas[,] and decided to turn the car around on Route 28 and drive north in the southbound lane to the nearest exit ramp. He then intended to drive down that ramp in the wrong direction in order to get gas at the gas station. After [Corporal] Markey and [Trooper] Lizik asked [Appellant] about alcohol consumption and the signs of impairment they observed, he told them he was not the driver of the vehicle. Trooper [Brittany] Hildebrand arrived on the scene and [Appellant] was transported for chemical testing. [Appellant's] [blood alcohol content (BAC)] was .141%.[2]

    [2] [Appellant] stipulated to the BAC results at 17 LAB 1470.

Trial Court Opinion (TCO), 12/3/2018, at 2-3 (internal citations and footnote omitted).

Following a non-jury trial on February 16, 2018, Appellant was convicted of the above-stated offenses. On April 5, 2018, he filed a motion for judgment of acquittal, which was subsequently denied. The trial court sentenced Appellant on May 3, 2018, and he filed a timely notice of appeal on June 4, 2018.[1] The trial court instructed Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and he timely complied.

_____

[1] The thirtieth day of the appeal period fell on Saturday, June 2, 2018. See Pa.R.Crim.P. 720(A)(3) ("If the defendant does not file a timely post-sentence motion, the defendant's notice of appeal shall be filed within 30 days of

- 2 -

Presently, Appellant raises the following issues for our review:

    I.    Whether [Appellant's] conviction for DUI[-g]eneral [i]mpairment must be reversed, and his judgment of sentence in this regard must be vacated, when the Commonwealth failed to prove, beyond a reasonable doubt, that [Appellant] operated a vehicle at a time he was rendered incapable of safe driving?

    II.    Whether [Appellant's] conviction for DUI[-h]igh [r]ate of [a]lcohol must be reversed, and his judgment of sentence in this regard must be vacated, when the Commonwealth failed to prove, beyond a reasonable doubt, that [Appellant] operated a vehicle less than two hours before his BAC was at least 0.10% but less than 0.16%?

Appellant's Brief at 4 (emphasis omitted).

In his first issue, Appellant argues that the evidence was insufficient to sustain his conviction for DUI–general impairment because the Commonwealth "failed to prove, beyond a reasonable doubt, that [he] operated his car at a time he was rendered incapable of safe driving." Id. at 14 (emphasis omitted). He maintains that "the Commonwealth must be able to sufficiently relate [Appellant's] impairment to the actual time of driving or operation[,]" and claims that "the Commonwealth presented no evidence as to when in time [Appellant] last drove the vehicle." Id. Specifically, Appellant asserts that, "[r]educed to its essence, the Commonwealth argued, and the trial court sitting as the factfinder found, that a vehicle would not have been

_____

imposition of sentence…."); see also 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation."). Thus, Appellant had until Monday, June 4, 2018, to file a timely notice of appeal.

- 3 -

sitting on a highway for very long. However, none of the officers observed the vehicle being driven, nor did they observe [Appellant] behind the driver's wheel." Id. Further, he contends that "none of the officers even approached [Appellant's] vehicle in order to conduct an investigation. As such, the Commonwealth presented no testimony that the hood of [Appellant's] vehicle was warm to the touch, a fact that would have created a permissible inference of recency." Id. at 14-15. As a result, he says that "there simply was no basis from which to conclude that [Appellant] had been driving or operating his vehicle shortly before the police arrived on the scene." Id. at 15.

> We apply the following standard of review to such claims:
>
> A challenge to the sufficiency of the evidence is a question of law, subject to plenary review. When reviewing a sufficiency of the evidence claim, the appellate court must review all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, as the verdict winner. Evidence will be deemed to support the verdict when it establishes each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. The Commonwealth need not preclude every possibility of innocence or establish the defendant's guilt to a mathematical certainty. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Teems, 74 A.3d 142, 144-45 (Pa. Super. 2013) (citation omitted).

The relevant statutory provision sets forth that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical

- 4 -

control of the movement of the vehicle." 75 Pa.C.S. § 3802(a)(1). This Court

has previously explained:

> "[S]ubsection 3802(a)(1) is an 'at the time of driving' offense, requiring that the Commonwealth prove the following elements: the accused was driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol." Commonwealth v. Segida [("Segida II")], ... 985 A.2d 871, 879 (Pa. 2009).[2] With respect to the type, quantum, and quality of evidence required to prove a general impairment violation under Section 3802(a)(1), the Pennsylvania Supreme Court in Segida [II] continued:
>
> > Section 3802(a)(1), like its predecessor [statute], is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving.... The types of evidence that the Commonwealth may proffer in a [S]ection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two

---

[2] Segida II vacated in part this Court's decision in Commonwealth v. Segida, 912 A.2d 841 (Pa. Super. 2006) ("Segida I"). Specifically, this Court had deemed the evidence insufficient to sustain the defendant's convictions under 75 Pa.C.S. §§ 3802(a)(1) and 3802(c) (DUI–highest rate of alcohol). Our Supreme Court subsequently granted the Commonwealth's petition for allowance of appeal, and concluded that the Commonwealth's evidence was sufficient to sustain the defendant's conviction under Section 3802(a)(1). It did not address the sufficiency of the evidence with respect to Section 3802(c) because the Commonwealth did not challenge it on appeal, as it conceded that it failed to establish the time the defendant's blood was drawn for testing and "therefore could not prove that [the defendant's] blood alcohol level was elevated within two hours after he had driven, as required under Section 3802(c)." Segida II, 985 A.2d at 874 n.3.

> hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a [S]ection 380[2](a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of [S]ection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol-not on a particular blood alcohol level.

> Id. at ... 879.

Teems, 74 A.3d at 145 (some brackets added).

We reject Appellant's argument that the Commonwealth did not "sufficiently relate [his] impairment to the actual time of driving and operation." Appellant's Brief at 14. Trooper Lizik testified that he saw "a black Mercedes sedan parked on the western shoulder of State Route 28 southbound, facing northbound." N.T. Trial, 2/16/2018, at 27; see also id. at 7. Appellant identified himself as the owner and the driver of that vehicle. Id. at 27. His eyes were "glassy and bloodshot. His speech was slurred. And the odor of alcoholic beverage was emanating from his breath and his person." Id. at 28; see also id. at 42. Corporal Markey also described Appellant as acting "goofy" and "[s]ort of carefree. ... Like someone that ... had too much to drink." Id. at 11-12. Appellant initially explained that his vehicle was facing the wrong direction because "it just ran out of gas and they were attempting to return to the nearest exit which would be reversing course and driving northbound to exit the wrong way at Exit 14, Tarentum." Id. at 28. We point out that Route 28 "is a divided highway." Id. at 13. Consequently,

we consider Appellant's extremely dangerous attempt to turn around on a divided highway and drive the wrong way down an exit ramp to procure gas as proof that he drove when he was incapable of safely doing so. See Segida II, 985 A.2d at 880 (observing that "the accident itself constitutes evidence that [the defendant] drove when he was incapable of doing so safely"); N.T. at 56 (The court: "This is what tells me that someone was intoxicated at the time. Who in God's name would think it is a smart idea to turn around on Route 28 … and try to get your car in the opposite direction so you can go the wrong way down the ramp to get gas…[?] When you talk about how dangerous that is. It is unbelievable to me.").

In addition, the police officers represented that they had not received any reports of vehicles or motorists in need of assistance in that area, and "[w]hen [they] observed the four individuals['] running across [Route 28] from west to east, that was the first time that [they] were made aware there was a vehicle in that position." Id. at 31. Trooper Lizik testified that "there's always traffic … on Route 28[,]" and that "[u]sually through the night[,] at least 1 or 2 [cars go by in] a minute." Id. at 35. Corporal Markey also stated that they "encountered [the group] in a very busy interchange." Id. at 15. Trooper Lizik conveyed that the police "weren't made aware from the radio dispatch that anybody was driving the wrong way on [Route] 28. We typically receive those immediately." Id. at 38. He additionally noted that the group was running from the car as if they were trying to leave the scene immediately. Id. Based on the foregoing, the circumstantial evidence

supports that Appellant had operated the vehicle shortly before the police arrived. See Segida II, 985 A.2d at 880 (finding that the circumstantial evidence was sufficient to establish that the defendant drove while he was incapable of safe driving where, inter alia, a police officer "opined that it was doubtful that the accident had occurred two or three hours or even ten minutes prior to his arrival on the scene due to traffic on the road") (citation and internal quotation marks omitted); see also Teems, 74 A.3d at 148 ("[I]t would be quite doubtful that a car clearly damaged from a recent accident sat in a lane of travel on Interstate 81 for very long before travelers ... would have called 911 to report the dangerous situation. The area in question was not a remote, secondary or tertiary roadway in a rural setting...."). Accordingly, we conclude that the Commonwealth proved that Appellant operated his car at a time he was rendered incapable of safe driving.

In his second issue, Appellant argues that the evidence was insufficient to sustain his conviction for DUI–high rate of alcohol because "the Commonwealth failed to prove, beyond a reasonable doubt, that [Appellant] operated his car less than two hours before his BAC was at least .10% but less than .16%." Appellant's Brief at 28 (emphasis omitted). He asserts that "[t]he record shows that the officers encountered [Appellant] at 2:45 A.M., that [he] underwent chemical testing at 3:33 A.M., and that [his] BAC was 0.141%. However, the Commonwealth presented no evidence to prove that [Appellant] had operated his vehicle with[in] two hours of the blood draw." Id. Further, he says that "the Commonwealth failed to preclude the possibility

that [Appellant] drank alcohol only after his vehicle became disabled on the side of the highway." Id. at 29.

No relief is due. The pertinent statute provides that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle." 75 Pa.C.S. § 3802(b). In this case, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we deem the circumstantial evidence sufficient to prove that Appellant's blood was drawn within two hours of his driving. See Teems, 74 A.3d at 144-45. We have already determined that the evidence supports that Appellant operated the vehicle shortly before the police arrived. See supra, at 6-8. Further, the police's quick arrival would leave minimal time, if any, for Appellant to consume alcohol after his car became disabled. Both Corporal Markey and Trooper Lizik testified that, during their time on the scene, they did not observe Appellant's consuming any alcohol or any other substances. N.T. at 12, 31. While they did not approach or search Appellant's vehicle, they stated that they did not see any alcoholic beverages or empty bottles or cans in the area where they encountered Appellant. Id. at 12, 31-32, 35. Corporal Markey also stated that, though there is a gas station and restaurants in the area, they are located off the exits and not on Route 28. Id. at 19; see also id. at 26 (describing

Route 28 as a "limited access highway" with no pedestrians). Finally, we reiterate that the perilous and absurd act of driving the wrong way on a highway corroborates that Appellant did not consume alcohol only after his vehicle became disabled. See Appellant's Brief at 29. Based on the foregoing, we determine that the circumstantial evidence supports Appellant's conviction for DUI-high rate of alcohol. See Commonwealth v. Rakowski, 987 A.2d 1215, 1219 (Pa. Super. 2010) (deeming the evidence sufficient to sustain the verdict for DUI–highest rate of alcohol where the jury credited a witness's testimony that there was "no consumption of any beverages by [the a]ppellant prior to the arrival of the police, which ... undermines [the a]ppellant's position that the Commonwealth presented no evidence to refute the 'possibility' that [the a]ppellant ingested alcohol after the accident"); cf. Segida I, 912 A.2d at 849 (considering the evidence insufficient to sustain the appellant's conviction for DUI-highest rate of alcohol where, inter alia, the police officer "did not testify as to whether there were signs of imbibing alcohol in the car or nearby, or whether there were drinking establishments nearby which would have provided [the defendant] an opportunity to drink after he stopped driving. This fact provides greater uncertainty to the premise that [the defendant's] incapacity during the encounter with [the police officer] was

representative of his incapacity when he was driving…").[3]  Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  6/18/2019

_____

[3] This author dissented in Rakowski, recognizing that "the Commonwealth failed to preclude the possibility that [the a]ppellant consumed alcohol after driving."  Rakowski, 987 A.2d at 1223 (Bender, J., dissenting).  In that case, however, there was an established window of time where the appellant had been left alone at the scene in his disabled vehicle, and the appellant claimed at trial that he drank alcohol during that time.  See id.  Moreover, in contrast to Appellant's driving the wrong way on a highway, the accidents themselves in Rakowski and Segida I ostensibly could have occurred for reasons unrelated to drunk driving, as they were not as blatantly irresponsible and outrageous as Appellant's endeavor in the case sub judice.  See Rakowski, 987 A.2d at 1217 (explaining that the appellant's vehicle and another car had hit debris and were disabled on the side of an interstate when a trooper encountered the appellant sleeping in his vehicle); Segida I, 912 A.2d at 842 (stating that the defendant's vehicle had "rotated 180 degrees and come to rest into some brush[,]" and the defendant "indicated to [the officer] that he had been driving the vehicle westbound … when he lost control of the vehicle while arguing with his brother") (internal quotation marks omitted).